## McNamara v. Dakota Fire & Marine Ins. Co.

1. Courts will construe a contract of insurance liberally, so as to give it effect, rather than to make it void. Conditions which create forfeitures will be construed most strongly against the insurer. Only a stern legal necessity will induce such a construction as will nullify a policy.

2. An immaterial variance in the incumbrance upon, or value or size of, property, which was in no way detrimental and which did not render the risk more hazardous, would not vitiate the contract, but if false and material, would effect the rights of parties. What would be considered a slight variance in one instance, might be material in another; the materiality to be determined by the amount insured, the value of the property the amount of incumbrance in proportion to value; and all relate to the fact as to whether the risk would have been assumed had the exact fact been known at the time the policy was issued.

(Syllabus by the court. Argued Apr. 12, 1890. Opinion filed Dec. 3, 1890.)

Appeal from the district court, Davison county, Hon. BARTLETT TRIPP, Judge.

Action upon a policy of fi·e insurance. Plaintiff had judgment. Defendant appeals. Affirmed. KELLAM, J. not sitting, nor taking any part in the case.

The facts are stated in the opinion.

*Dillon* and *Preston*, for appellant.

When a warranty is understandingly and clearly given by the insured, no matter how immaterial the fact warranted may be, he will be held strictly to his contract. Wood on Ins. 272,

284, 313; Jeffries v. Ins Co., 22 Wall. 47; Ins. Co. v. France, 91 U. S. 510; Ripley v. Ins. Co. 30 N. Y. 136; Byers v. Ins. Co. 35 O. St. 606; Davenport v. Ins. Co., 6 Cush. 340; Barteau v. Ins. Co.,67 N. Y. 595. Statments made warranties are deemed material whether they are so or not, and if shown to be false there can be no recovery upon the policy. Higbie v. Ins Co., 53 N. Y. 603; Ins. Co. v. Gunther, 116 U. S. 113; Ins. Co. v. Pyle, 44 O. St. 19; Brooks v. Ins. Co., 11 Mo. 349. The plaintiff is bound by his warranties in reference to encumbrance, character of dwelling house insured and condition of title, although he is not guilty of any fraud or moral falsehood. Hayward v. Ins. Co., 10 Cush. 441; Ryan v. Ins. Co., 1 N. W. 426; Glade v. Ins. Co., 9 N. W. 320; Cooper v. Ins. Co., 50 Pa. St. 297; Leroy v. Ins. Co., 39 N. Y. 90; Dwight v. Ins. Co., 103 N. Y. 341.

*D. G. Maclay,* for respondent.

The alleged breaches of warranty as to encumbrance, character of dwelling house insured, and title of plaintiff to the property insured are all of small magnitude and immaterial in their nature. The questions of the materiality of warranties in policies of insurance and the method of determining such materiality are settled in this state. Civil Code §§ 1539, 1499; Waterbury v. Ins. Co., 43 N. W. 699; Ins. Co. v. Neidecken, 43 N. W. 696. This case is brought within the rule of *stare decsis.*

BENNETT, J. This is an action instituted by the plaintiff against the defendant insurance company, on a policy of insurance for loss sustained in the destruction by fire of his buildings, machinery, and household goods. The policy was issued upon a written application made by the plaintiff. The defense is based upon fraud or attempted fraud in falsely swearing to certain statements or facts made in the application, which it is alleged were material to be known to the insurer at the time the policy was issued, A trial was had upon the issues before a jury, and a verdict rendered in favor of plaintiff, new trial denied, judgment rendered, and appeal taken from said judgment. The question in relation to the regularity of the appeal will be considered as waived, as respondent did not

insist upon it in his argument.    The defenses allege breach of warranty, or statements as to the incumbrances, the dwelling-house, the number of acres broken, and as to title.   So much of the application signed by the plaintiff, and made a part of the policy by its conditions, as is pertinent or essential to the consideration of this case, is as follows:

"I, James McNamara, of Mitchell P. O., Davison county, Dakota, hereby make application to the Dakota Fire & Marine Insurance Company, of Mitchell, Dakota, for insurance against loss or damage by fire or lightning, to the amount of $1,217, and by tornadoes, cyclones or wind storms, to the amount of $1,217, for the term of three years from the 18th day of February, 1888, on the property, as below specified, described, valued and located by me, now in my possession, and of which I am the sole and undisputed owner, viz.: [Then follows description of the property insured.] All to be occupied by assured for private dwelling and farm purposes only.   (1)   Is dwelling completed?  Yes.  No. of rooms?  ———.   (2)   How many plastered?  Papered.   (3)  Is it plastered inside?  No.  Outside?  No.   (4)   Are there blinds to all the windows?  No. (5)   Material of chimneys, full particulars?  Roof cap.   (6) Do any stovepipes pass through roof?  No. Or partitions? No. Or sides of building?  No.   (7)   How much land is embraced in the farm upon which the property is situated?  160 acres. (8)   How many acres now under cultivation?  40.   (9)  What is it worth per acre?  $10.   (10)   Have you deed for same?, or what is the nature of your title?  Pre-emption.   (11)   Is it mortgaged or otherwise incumbered?  No.   (13)   Is your personal property, herein described, mortgaged or otherwise in cumbered?  Yes.   Amount?  $350.   *   *   *   (16)   Have you any fears of incendiarism?  No.   (17)   Is there other fire insurance on the property?  No.

"I hereby agree that if stovepipe or metal chimney is used there shall be a clear space of at least four inches maintained between any wood-work and said stovepipe or chimney, (except where metal ventilator is used through which such pipe or chimney passes;) otherwise no claim will be made for any loss

by fire under any policy that may be issued hereon.   In case of
loss  originating from prairie fire, in the absence of a good and
sufficient fire guard at least seventy-five feet  wide  around  the
property, or from use of steam engine or furnace on  premises,
without special permit therefor, in writing signed by the secre
tary, I hereby agree that no claim for loss  shall  be  made.   I
agree to keep said premises in good repair.   The company
shall  not  be bound by any act done, or a statement made to or
by any agent which is not contained in this my application, and
the statements above made  and  answers  to  questions  above
given,  whether  written  by  me or not, will be assumed as my
act—are true—and a warranty on my part, and  are  the  basis
upon  which  I ask insurance by the Dakota Fire & Marine In-
surance Company on the property herein set forth, and the pol-
icy issued hereon is made a part hereof.   It is hereby expressly
stipulated and agreed by and between the parties hereto that, if
a loss occurs while the note given for the premium is past due and
unpaid, the company is not liable.   There are no exposures but
farm outhouses within 100 feet, except as follows:     *     *     *
JAMES MCNAMARA, Applicant.   Signed and delivered in pres-
ence of GEO. A. SILSBY."

Taking up the alleged breaches of warranty in their order,
the first refers to the amount of the incumbrance on the  prop-
erty.   The evidence shows that the incumbrance on the  prop-
erty was as follows:   To Ira E.  Cook, $255; to F. Weller, two
notes, one for $18.40, and one for $20, (the first had all been
paid but $1.50;) Plankinton Mutual Relief  Association, $13.50;
and one to Warder, Bushnell & Co. for  $90,—amounting in the
aggregate to the sum  of  $380.   The  plaintiff  denies in  sub-
stance his liability on the note for $13.50, given to the Plankinton
Mutual  Relief  Association.   Taking this from the  aggregate
amount it leaves $366 as the total of  his  incumbrance  on  the
property, without accrued interest of $24.13, which,  if  added
to it, would make the amount of incumbrance $390.13.   In  the
application the plaintiff stated the amount to be  $350, a  varia-
tion of $40.13 between the amount stated in the application and
the actual amount of the incumbrance.   Was this of  such  ma-

teriality as to render the policy void? There can be no doubt but that the inquiry in relation to incumbrances on property to be insured is material to the risk, and that the defendant had a right to require the answer to be substantially true, and if not so, the plaintiff cannot recover. We do not, however, suppose that actual precision is requisite in such a statement, or that the omission to state a small amount of interest, or a slight difference in amount of principal, would avoid a policy. If the variation were of such an amount, in proportion to the value of the property insured, or raised the incumbrance to such a sum as to materially increase the risk, and which, if known to the insurer, would have caused him to have rejected it, it would avoid the policy. In the case of Moulor y. Insurance Co., 111 U. S. 335, 4 Sup. Ct. Rep. 466, it was held that when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligation of a warranty. The same rule of construction was adopted and held in the case of Insurance Co. v. Hazelett, 105 Ind. 212, 4 N. E. Rep. 582. Courts will construe a contract of insurance liberally, so as to give it effect rather than to make it void. Conditions which create forfeitures will be construed most strongly against the insurer. Only a stern legal necessity will induce such a construction as will nullify a policy. The case of Rogers v. Insurance Co., 121 Ind. 571, 23 N. E. Rep. 498, was almost identical with the one under consideration. Numerous questions were answered as to the property, and then follows this statement: "I warrant the foregoing application to contain a full and true description and statement of the condition, situation, value, occupation, and title of the property hereby proposed to be insured in the Phoenix Insurance Company, and I warrant the answers to each of the foregoing questions to be true." In the body of the policy of insurance issued is the following provision: "This insurance is based upon the representations contained in the assured's ap-

plication of even number herewith on file in the company's office in Chicago, Illinois, each and every statement of which is hereby specifically made a warranty and a part hereof, and it is agreed that if any false statements are made in said application this policy shall be void." The court said: "It is expressly stated in the policy that the insurance 'is based upon the representations' contained in the policy. The language used in the application and in the policy construes the statements in the application as representations, but also seeks to construe them as warranties. It is a well-recognized rule of construction that when the language used in a policy is capable of two constructions, the one most favorable to the assured shall be given to it; but the appellee in this case seeks to place a narrow construction on the language used, and the construction must favorable to itself. * * * The application and policy must be construed together, and in construing them the statements in the application do not constitute a warranty, but are representations, and must be treated as such in determining the liability of the company upon the policy." The court then held that, although some of the answers to the questions in the application were not literally true, yet that fact did not avoid the policy, and further says: "It would hardly seem consistent that fair dealing persons would intend that an immaterial variance in the age, or value, or size of a building, which was in no way detrimental, and which did not render the risk more hazardous, should vitiate the contract; but if false and material, they would affect the rights of the parties." The precise amount of a person's indebtedness is a matter about which he may be slightly mistaken. Applications for insurance are usually taken at a time and under circumstances when the insured is not able to determine the exact amount of each incumbrance upon the property insured, or the sum total of the interest due, or that has accrued. What would be considered a slight variance in once instance might be material in another, and this would be determined by the amount insured, the value of the property, the amout of incumbrance in proportion to the value; and all relate to the fact as to whether

the risk would have been assumed by the insurer if the exact amout of incumbrance had been known at the time the policy was issued. This seems to us to be a reasonable construction. The representations made in this case in relation to the incumbrances cannot be held to affect the risk, or to make the policy void.

As to the representations about the dwelling house, the testimony showed that a wing attached to the house was built of frame, and was also sodded up upon three sides. In this room the plaintiff slept. The statement showed that the building was a frame, shingle roof building. When the sods were placed around this portion of the house the testimony does not disclose. At the time the application was made, the representations in this particular may have been literally true. If not, it is very hard to see how the character of a frame house can be materially changed by placing sods around three of its sides. This practice is a very common one in our prairie houses, and is a cheap and effective protection against the iuclemency of the winter. The material is non-combustible, and could, under no circumstances, have endangered the house, so far as fire was concerned, but rather it rendered that part of the building more safe from it. This statement was not a misdescription that could in any way affect the validity of the policy.

The next alleged breach of warranty was in regard to the number of acres broken upon the quarter section of land upon which the house stood. The question asked in the applcation is, "How many acres now under cultivation?" Answer, "40." The question preceding in the appiication was: "How much land is embraced in the farm upon which the property is situated?" Answer, "160 acres." By reference to the policy, it will be seen that the property insured was a "dwelling house," "household furniture," "a barn," "grain in granary," "hay in barn and other buildings," "horses and mules, while on premises," "cattle and colts," etc., "on reapers, mowers," etc., "on wagons, buggies," "on violin," "on machine house, wagon shed," all situated on the S. E. ¼, section 24, township 104, range 60, Davison county, Dak. The question asked had ref-

erence only to the size or number of acres of that described tract of land and the number of acres cultivated on it. The appellant's contention is based upon the theory that the defendant was asked the question, "How many acres have you under cultivation?" It will be seen by the question quoted above, this was not the interrogatory. The insurer was seeking to ascertain how many acres were cultivated on that particular tract of land, and the testimony discloses the fact that the insured answered truthfully. The appellant also contends that the failure of the defendant to disclose the true condition of the title at the time the policy was issued, was a concealment that avoided the policy. "A neglect to communicate that which a party knows and ought to communicate is called a 'concealment.'" Section 4119, Comp. Laws. The application begins as follows, in print: "I, James McNamara, hereby make application," etc., "for insurance," etc., "on property * * * now in my possession, and of which I am sole and undisputed owner, viz." Below and after this follows the question and answer: "Have you deed for same, or what is the nature of your · title?" Answer, "Pre-emption." The testimony showed that plaintiff had a pre-emption filing on the land at that time. By this answer the plaintiff said that the government had the title; that while it might be true that others might claim or were claiming this land by pre-emption, yet he had a pre-emption title, or interest in the land, for whatever that was worth. There may have been a contest of that title or interest, yet in no manner could that make his answer untrue. The question put does not ask as to the legal title. It is in the alternative, and asks as to the title, or as to an interest. That plaintiff had an interest in the premises at the time is not disputed. That it had its origin in a pre emption filing made to him is not disputed. Whatever the limit of that title or interest, or whatever the complications arising in relation to either, grew out of this pre-emption. The answer, then, could in no sense be said to be untrue. That the plaintiff had some title to the premises at the time, the facts of the case fully disclose, because the record shows all the questions arising by reason of the contest upon the land have been

decided in favor of plaintiff. Neither does it appear, nor is it claimed, that the defendant has been misled by the plaintiff. If the answer had been absolutely untrue, it, no doubt, might have done so. Not being untrue it cannot avoid the policy. Judgment affirmed.

KELLAM, J., not sitting, nor taking any part in the decision.