ABRAM L. STEBBINS, EXECUTOR, ETC., v. THEODORE T. STEBBINS ET AL.

*Will—Construction.*

1. Courts should not seek out technicalities, or arrive at forced or far-fetched conclusions, in order to destroy a will, because of any idea that the testator has done his next of kin injustice, or conveyed his property away from his relatives, and given it to those having no claim upon his bounty.

2. The testator, if of sound mind and not unduly influenced, has a right to dispose of his property as he sees fit; and it is the duty of courts to ascertain his intention from the will con-

strued as a whole, and to harmonize all of its provisions, if possible, to that intent.

3. While a legacy may not be a debt of the testator during his life-time, and while, in the strict sense, there is a difference in the definitions of debts and legacies against his estate after his death, yet both are charges upon the estate, which may be enforced and collected; and, in the use of terms by a layman in drafting his will, the legacies which he has provided for therein may well appear to him as debts against his estate, and be so defined by him in after portions of the will.

So *held,* where a testator, after providing for the payment of his debts and funeral expenses and for certain legacies, directed that, after all debts and expenses were paid, the balance of his estate should be equally divided between two church boards; and it was claimed that neither of the terms "debts and expenses" could, by the most liberal interpretation, be made to include the legacies before provided for.

4. A testator directed the payment of his debts and funeral expenses out of his "means," which might be in the hands of a designated person, specifying certain notes and other choses in action, and a mortgage, given upon the house and three lots of land on which his brother then lived, to secure a loan of $1,500. The will then provided that the brother and his wife were to hold and enjoy *all of said property* during their natural lives, and that after their decease it should be sold, and the avails divided between certain missionary boards. And it is held that the term "*all* of said property" referred to the $1,500 mortgage, and that the evident intent of the testator was that the mortgagors should have the use and enjoyment of the entire mortgaged premises during their life-time, without being harassed by the mortgage.

Appeal from Wayne. (Reilly, J.) Argued May 13 and 14, 1891. Decided July 3, 1891.

Bill to construe a will. The defendant Emily D. R. Stebbins appeals. Decree affirmed. The facts are stated in the opinion.

*Hoyt Post,* for complainant, *C. I. Walker,* for defendant American Missionary Association, and *Walker & Walker,* for defendant Harper Hospital, unite in one brief, and contend for the doctrine of the opinion.

*B. M. Thompson,* for appellant, contended:

1. The will is to be construed as written, and, if incapable of an intelligent construction, must fail for uncertainty; citing *Waldron v. Waldron,* 45 Mich. 350, 353; *Crooks v. Whitford,* 47 Id. 283, 291; *Mackie v. Story,* 93 U. S. 589; *Tucker v. Society,* 7 Metc. 188; *Fitzpatrick v. Fitzpatrick,* 36 Iowa, 674; *Mason v. Bateson,* 26 Beav. 404; *Taylor v. Maris,* 90 N. C. 619; *Clark v. Clark,* 2 Lea, 723.

2. Force and effect cannot be given to the several provisions of this will without wholly disregarding the ordinary meaning of plain and common words; and the aid of the court is sought, therefore, not to construe such separate provisions, but the will as a whole. All ambiguity and difficulty that confront the court is due solely to the inconsistent and conflicting provisions of the will. This ambiguity is wholly patent, and must be removed, if at all, by construction, and not by the aid of extrinsic proof; citing same authorities.

3. If there is a simple principle of government accepted as true by all civilized people it is this: That the natural objects of every man's bounty are his children and grandchildren; and this principle is recognized by the courts in the interpretation of wills by the rule that the heir is not to be disinherited by conjecture, but only by express words; citing *Wilkins v. Allen,* 18 How. 385.

MORSE, J. The bill in this case is filed to obtain a construction of the will of Nehemiah D. Stebbins, the disposing clauses of which are as follows:

"I desire, as soon as convenient after my decease, that all my debts and funeral expenses be paid out of my means, which may be found in the hands of Jacob S. Farrand, of the city of Detroit, to the amount of $4,700, in one note against H. C. Parke, of two thousand dollars, and another against Parke, Davis & Co., to the amount of twenty-seven hundred dollars; also a certificate of deposit in the Commercial Bank, in the city of Detroit, Mich., to the amount of eight hundred dollars, perhaps some more, which will be found among my papers in the hands of nephew Abram L. Stebbins, of the city of Detroit, Mich.; also a mortgage of fifteen hundred dollars loaned to my brother Theodore T. Stebbins, this mortgage being a security on the house and three lots of land on which he now lives in the city of Dowagiac,

Michigan; and now on file in the clerk's office of said county.

"Item 1. I wish my brother Theodore T. Stebbins, and his wife, Fanny, to hold and enjoy all of said property during their natural life. The interest to be collected, if they wish, after their decease or close of life.

"Item 2. After their decease, I wish the property to be sold, and the avails of said property to be divided between the Foreign Presbyterian Board of Missions and the Home Board of Presbyterian Missions, both expended on the Pacific coast, in California, Oregon, as the board may think best.

"Item 3. I give and bequeath to my son, Theodore W. Stebbins, the sum of five hundred dollars, also the large family Bible, if he desires it; if not, it may be put into the hands of my granddaughter, Emily D. R. Stebbins.

"Item 4. I give and bequeath, as a matter of indebtedness, to my niece, now Eugenia L. Benson, the sum of one hundred dollars.

"Item 5. I give and bequeath the sum of one thousand dollars for the purpose of raising a sum of twenty thousand dollars for the purpose of increasing the facilities for the education of nurses in the Harper's Hospital in the city of Detroit, now under the management of the First Presbyterian Church of said city. If it should not be raised, I direct it to be given to the Detroit missions in the Presbyterian church.

"Item 6. A small note of seventy-five dollars may be found against my brother Fitzallen Stebbins; if so, give it up to him or destroy it.

"Item 7. I give and bequeath five hundred dollars to the American Missionary Society.

"Item 8. After all debts and expenses are paid, give the balance left, in equal sums, to the foreign and home boards of the Presbyterian Church, unless extreme want shall be observed by my executor among my brothers and only living son. In such case I will leave it optional with him to give a portion or the whole, as he shall in his judgment decide what ought to be done.

"Item 9. All my personal effects, such as books or clothing, I desire to be divided among my brothers and their families, giving my granddaughter, Emily D. R. Stebbins, the privilege of selecting from them if it is her wish."

The intent of this will is very plain to me, and it can be gathered entirely from the will itself, without resorting to any other means of construing it; and I think the circuit judge, Hon. C. J. Reilly, of the Wayne circuit court, came to the right conclusion, and the only one that the will is susceptible of. No other conclusion can be reached without making a different will than the testator plainly intended, or by destroying the will, when it is clearly, to my mind, a perfectly harmonious and valid instrument.

Courts should not seek out technicalities, or arrive at forced or far-fetched conclusions, in order to destroy a will, because of any idea that the testator has done his next of kin injustice, or conveyed his property away from his relatives, and given it to those who have no claim upon his bounty. Nor should the will be examined by a microscope to find some ambiguity or some contradiction by which it may be annulled in the interest of the heirs, however deserving or poor the heirs, or any of them, may be. The testator, if of sound mind and not unduly influenced in this case, had a right to dispose of his property as he saw fit; and it is the duty of the courts alone to seek out his intention, and to find such intention from the will construed as a whole, and to harmonize all the provisions, if possible, to that intent.

It is not claimed either that the testator was of unsound mind or that he was unduly influenced by any one; and we cannot listen to the argument that the granddaughter, in whose behalf the appeal to this Court is taken, is poor, and the daughter of one who gave his life for his country during the Rebellion, or that she was beloved of her grandfather. These considerations, while appealing to our sympathy and our respect for her, cannot weigh one feather's weight in the examination of

this will, if we are not swerved thereby from our duty under the law.

It is claimed by her counsel that there are in this will three separate dispositions of all or nearly all of the testator's property, each disposition being entirely inconsistent with the others; that this inconsistency and contradiction in the will cannot be harmonized so as to make the instrument a valid one; and it must therefore be declared null and void. It is contended—

*First.* That Theodore T. Stebbins and his wife, by items 1 and 2 of the will, take a life-estate in the whole property of the deceased, and at their death the same is to be equally divided between the foreign and home boards of missions of the Presbyterian Church. This is one disposition of the whole property.

*Second.* The testator then disposes of a part of his property in items 3, 4, 5, 6, and 7, of his will; and, *lastly,* he disposes of the whole of his property again in the eighth item to the above-named mission boards.

The contention that Theodore T. Stebbins and his wife, Fanny, take a life-interest in the whole estate, is grounded upon this language of the first item: " To hold and enjoy *all* of said property during their natural life." It is said that the words "all of said property" manifestly relate to his property which he describes in the first or opening paragraph of his will, before he itemizes his bequests. But this is clearly not so. The phrase " *all* of said property" undoubtedly refers to the property described in the last clause of said paragraph, to wit:

"Also a mortgage of $1,500 loaned to my brother Theodore T. Stebbins, this mortgage being a security on the house and three lots of land on which he now lives in the city of Dowagiac."

The property he is speaking of is this mortgage. He

evidently intended to save their home to them during their natural life. The word "all" was no doubt used to carry the idea that he wanted the house and all the lots to be used by them unincumbered by his mortgage as long as they lived. And the other clause of item 1, to wit, "the interest to be collected, if they wish, after their decease or close of life," is consistent with this wish. What he wanted to do was not to give them this mortgage, or the interest upon it, but to fix it so that they would not be harassed by the mortgage upon their home, or any part of it, as long as they lived. To that end they might, if they saw fit, pay the interest as it fell due while they lived; but, if not, they might let it accrue with the mortgage against the property upon which it was secured. Construed in this way,—and it is a reasonable construction with the whole of the will,—this clause in reference to the interest is intelligible, and means something. Construed as giving a life-estate to them, this clause becomes absolutely meaningless, and item No. 1 is in flat contradiction of every other item in the will, except perhaps the second one.

The counsel for the appellant admits that he cannot explain or reach the meaning of this interest clause, construing the will as intending, in item No. 1, to give a life-estate in the whole estate to his brother Theodore and his wife. It may well be admitted that this interest clause is meaningless, if such construction prevails. It is very evident that the testator did not intend that this interest clause should apply to all his property, which consisted almost entirely of interest-bearing securities. He did not mean that the clause should be read as follows: "The interest to be collected on the notes, certificate of deposit, and the mortgage, if they wish, after their decease or close of life," thereby giving them a life-estate in the whole property, if they wish it; and, if they

do not wish it, then tieing up the whole estate until after their deaths, and then selling the notes, etc., under the second item of the will. · A life-estate in his whole property would consist of the use of it, which would be the interest upon the securities of which his estate was composed. But, construing item 1 as I have construed it, it is in perfect harmony, not only with item 2, but with every other item in the will. Then this clause as to interest applied to the mortgage has a meaning, and can be given effect.

But it is argued that the use of the word "property" shows that the testator did not refer to the mortgage alone, but to the whole property. In answer to this, it will be seen that the testator, in the opening paragraph of his will, does not use the word "property" at all. He speaks of his "means," and describes what such means are. It will be admitted, probably without much question, that the term "property" applies just as well, in every sense of its common use, to a mortgage as to a promissory note or a certificate of deposit. When he used the word "property" he evidently had in mind the homestead of his brother, and wished him to hold and enjoy it with his wife as long as they might live; and in the second item he speaks of wishing the property sold, and the avails of the same to be divided between the mission boards, no doubt having in view the fact, which is quite evident to have been in his mind all the time, that when the mortgage was collected the land would have to be sold to make its amount. This thought that the mortgage could not be collected without selling the land accounts for the fact that, while he does not give them anything except the forbearance, if they choose, of the collection of interest while they live, he is careful

86 MICH—31.

that they shall not be disturbed in the property covered by the mortgage.

The main intent of this will, from beginning to end, is to give the bulk of his property to religious societies; and, while the wisdom of this may be questioned, his right to do so cannot be disputed.

It is argued that the testator intended to give all his estate, regardless of the other bequests in his will, to the foreign and home boards of the Presbyterian Church, in the eighth item of his will, unless "extreme want was observed by his executor among his brothers and only living son." This argument is based upon the language:

"After all debts and expenses are paid, give the balance left, in equal sums, to the foreign and home boards of the Presbyterian Church."

It is said that neither of the terms "debts and expenses" can, by the most liberal interpretation, be made to include the legacies going before this item No. 8 in the will, and the dictionaries have been cited to prove this. While a legacy left in a will may not be a debt of a testator while he is yet living, and while, in the strict sense, there is a difference in the definition of debts and legacies against a man's estate after his death, yet both are charges upon the estate, and are liabilities of the estate, which may be enforced and collected; and, in the use of terms by a layman, the legacies that he had provided might well appear to him as debts against his estate, and be so written by him. And the distinction between debts and legacies is but a technical, though a legal, one, and one as well as the other takes money from the estate to pay or discharge it. It is plain enough that he intended this eighth item to be a disposition of the balance of his property, not bequeathed in the other items, except his personal effects. This is,

we think, what would strike the common understanding at once, and courts are not to be so technical as to disregard the plain and common meaning of a word or words used in an instrument, when such meaning is also obvious from the whole context.

It must be remembered that this will was drawn by the testator himself, and not by a lawyer skilled in the use of legal phrases. He used words in the meaning as they appeared to him, and it is not unnatural nor unreasonable to infer that when he spoke of "all debts," not "my debts," he was speaking in reference to the legacies which he had, in the items preceding this eighth one, made charges and liabilities upon his estate. Indeed, this is the natural and obvious interpretation of his language, when the whole will is taken together, as it must be, to get its meaning. It will be also noticed that in the very first part of his will, before he mentions his "means" or gets to the disposition of his property, he desires that, "as soon as convenient after my decease, all my debts and funeral expenses be paid out of my means." This was the first thing to be attended to. It is clear from this, also, that when he speaks of debts and expenses in the eighth item of the will he refers to the liabilities of the legacies and the expenses of administration. But it seems useless to attempt to make that clearer which to me is patent and indisputable.

The only heirs of the testator are his son, Theodore, and his granddaughter, Emily D. R. Stebbins. The estate, in the absence of a valid will, would descend to them in equal shares. No one has appealed from the decree below but the granddaughter, and it is therefore unnecessary to examine the decree of the court below any further than it affects her rights.

It was shown in the testimony that the testator, on being asked if he had not willed anything to his brothers

and his granddaughter, who is the child of a deceased son, replied: "No, they have had their portion of my property, and this money belongs to the Lord, and I want it to be used in His work." This may explain why he made his will as he did; but I have given no consideration to the testimony taken in the case, as the will itself to me is plain as the light of day, and needs no extrinsic evidence to support it, or to gather its intent.

The decree of the court below is affirmed, with costs of this Court to the executor and against the appellant.

The other Justices concurred.