SERRILL v. OXTOBY.

1. WILLS—TRUSTS—ESTATES OF DECEDENTS.

In a suit to require trustees under the will of Thomas McGraw to account to the complainant beneficiaries for certain bequests, payable after all debts and demands of every kind against the estate had been fully paid, as declared by the terms of the bequest, which was contingent on the estate having sufficient property left after paying the claims and an annual allowance to the wife and daughter, *held*, that, by the provisions of the testament a certain office building known as the McGraw building was intended by testator to be maintained and improved and if its maintenance or development required additional incumbrances, which operated as an indebtedness, or if the payment of claims made it necessary to increase or renew the mortgage already existing against the building, it should be treated as debts or demands against the estate within the intent of said legacy; and as the mort-

gage had been re-funded for such purpose complainants could not recover their bequests. Also, *held,* that the execution of the will required the trustees to continue to act and supervise the management of the building and other property.

2. SAME—CONSTRUCTION.

The intent of the testator should be discovered from the four corners of the will, and all provisions be harmonized, if possible. Its construction may not be affected by events that transpire after its execution.

Appeal from Wayne; Hosmer, J. Submitted January 17, 1916. (Docket No. 86.) Decided March 31, 1916.

Bill by Jeannette Serrill and others against James V. Oxtoby and others, trustees under the will of Thomas McGraw, deceased, for a decree construing the will of said Thomas McGraw, for an accounting, and for further relief. From a decree for defendants, complainants appeal. Affirmed.

*Lewis A. Stoneman* (*Orla B. Taylor,* of counsel), for complainants.

*Oxtoby & Wilkinson,* for defendants.

STONE, C. J. This is an appeal from a final decree of the circuit court of the county of Wayne, in chancery, dismissing the bill of complaint. The bill of complaint states that Thomas McGraw, a resident of Detroit, died October 11, 1897, leaving a last will and testament and two codicils thereto, which were duly admitted to probate. The will is a very lengthy instrument, and we content ourselves with giving an abstract of it as stated by counsel for appellants:

Testator in paragraph 1 of the will, after vesting his property in the trustees named, directs the trustees, out of the proceeds of the sale of his property (excepting the McGraw Building and the homestead) and from the income of the estate, as follows:

"* * * Said trustees shall until all debts and claims against my estate are fully settled and paid pay quarterly to my beloved wife, Sarah I. McGraw, at the rate of three thousand dollars ($3,000.00) per annum for her support and maintenance, and shall pay quarterly to my daughter, Ivy F. McGraw, or to her guardian for her, if she shall then be a minor, at the rate of fifteen hundred dollars ($1,500.00) per annum, for her education, support and maintenance," etc.

The wife's annuity was increased by codicil made one week after executing the will to $5,000 per annum. The testator in the same paragraph directed the trustees to pay several other small annuities, and keep up the law library in the McGraw Building, pay pew rent to St. John's Church, pay the taxes and keep up the necessary repairs on the homestead and the McGraw Building, and provided that the provisions in favor of his wife, daughter, and the other annuitants named were to be personal, and to cease as to each of them with her or his death.

Paragraph 2 authorized the erection of a monument by the trustees, at such cost as their judgment should dictate, to be paid for out of the income of his estate, and as part of the expenses for administering the same.

Paragraph 3 referred to the care and management of the estate, and suggested that Homer McGraw should devote his time to its management.

Paragraph 4 authorized the trustees, in their discretion—

"to erect one or more additional stories upon the top of the said McGraw building, this to be done out of a fund to be accumulated out of the net income, and they are at liberty for this purpose, if in their judgment it shall be best, to delay the payment of the principal of the incumbrances on said premises; my present judgment is that probably within say five years after my decease such erection would be profitable, but with this suggestion, I leave the matter in the discretion of

my said trustees are hereby authorized to rebuild or be destroyed, or partly destroyed by fire, or otherwise, my said trustees. In case said McGraw building shall reconstruct the same."

Paragraph 5 is as follows:

"The residue of the proceeds of said sales, and the net income of said estate, shall be used to pay all my just debts, and upon the payment of all other debts, the same shall be applied as fast as may be, and set aside and accumulated to be applied as fast as may be, to the payment of all mortgages and incumbrances which may exist on said McGraw building property, and on my said homestead."

Paragraph 6 related to the erecting of a memorial fountain—

"after all my debts and mortgages and all incumbrances on my estate are fully paid, and when the net income of my estate shall have reached the sum of my said trustees shall set aside at least twenty-five twenty-five thousand dollars ($25,000.00) per annum, hundred ($2,500.00) a year until the sum of about fifteen thousand dollars ($15,000.00) shall be accumulated" for such purpose.

Paragraph 7 related to the use of the homestead by the wife and daughter. It provided for the free use of the same until the death of both of them, and then to go to the children of the daughter. This paragraph was changed by the second codicil dated August 15, 1896, which provided that upon the death of the wife the homestead should at once fall into and become a part of the residuum of the estate, to be treated and disposed of as such.

The eighth paragraph of the will was as follows:

"After all debts and demands of every kind against my estate are fully paid, said trustees shall pay 1 per cent. of my annual net income to each of the following institutions of the city of Detroit, viz.: St. Luke's Hospital, Harper Hospital, Home of the Friendless and

Woman's Hospital and Foundling's Home, to be used and applied solely for purposes as follows, viz.: To fully defray the expenses so far as the same may go of one or more indigent and deserving persons, as the officers of said institutions shall respectively select; of the remainder of the annual net income of my estate, if the same shall be but ten thousand dollars ($10,000.00) or less, my said trustees shall pay three-fifths (3/5) thereof in quarterly payments to my said wife during the term of her life, and two-fifths (2/5) thereof in quarterly payments to my said daughter during the term of her life; if the said remainder of my annual net income be over ten thousand dollars ($10,000.00) said trustees shall pay quarterly to my said wife during her lifetime at the rate of five thousand dollars ($5,-000.00) per annum, and as much more as shall with said five thousand dollars ($5,000.00) equal one-third (1/3) of the net yearly income of my said estate, and pay quarterly to my said daughter, Ivy F. McGraw, during her lifetime at the rate of five thousand dollars ($5,000.00) per annum, and as much more as shall with said five thousand dollars ($5,000.00) equal one-third (1/3) of the net income of my said estate, and until the final distribution of my estate as hereinafter provided shall continue the payments of the annuities to the said Elizabeth Ford, Mary Ann Williams and James Henry Selden in amounts and manner as above provided and in the event of the death of the said Elizabeth Ford, the annuity payable to her shall be paid to her daughter, Mary Ford, if living, and in the event of the death of said Mary Ann Williams the annuity payable to her shall be paid in equal shares to such of her daughters, Jane, Arvilla, Robie and Josephine as shall be then living.

"The above provisions in favor of my wife are intended to be in lieu of her dower interest in my estate, and are to be received and accepted by her in lieu thereof and in full of all her claims against my said estate.

"The payments above provided to be paid out of the income of my estate to my said daughter, Ivy F., shall be payable only to her or her legally constituted guardian and shall in no event be assignable by her, and an assignment by her of any portion of such income shall render null and void to that extent the pro-

vision of this will for the payment thereof to her. and the same as to the payments above provided to be made to the said James Henry Selden.

"Upon the death of my said wife said trustees out of the gross income of said estate shall pay the expenses of her funeral and burial in proper and fitting manner and of the inscription of her name upon the monument above provided for."

Paragraph 9 directs that the estate shall not be closed until the death of the wife and daughter, and in case of the death of the daughter before the death of the wife, it provides that during the remainder of the life of the wife the annuity provided for the daughter shall be divided among her children, share and share alike.

Paragraph 10 provided that upon the death of both the wife and daughter, and after the payment of all his debts, the estate is to be distributed, provided for the disposition of his law library, and directed that 1 per cent. of the residue be given to each of four hospitals, and one-third of the remainder to the children of his daughter, and of the residue Homer McGraw is to receive one-third, and the remainder divided into five parts, to be given to other devisees named.

Paragraph 11 referred to the appointment of his trustees, and in case of vacancy in the trusteeship provided for filling the same.

The twelfth paragraph nominated the executors, who were the same persons that had been named as trustees.

Testator's widow, Sarah I. McGraw, is still living, and 92 years of age. His daughter, Ivy McGraw Serrill, died March 8, 1913. The estate therefore is still vested in the trustees, and will remain so until the death of the widow. The complainants are the children of said daughter, Ivy McGraw Serrill, and Joseph M. Serrill, her husband, who is the administrator of her estate. The defendants are the trustees, and the

other annuitants and residuary devisees named in the will.

Upon the admission of the will and codicils to probate Homer McGraw, Hoyt Post, and Charles E. Swales, the executors named therein, qualified and continued to act as such, with the exception of Charles E. Swales, who died in August, 1905, until discharged as hereinafter stated. The executors filed an inventory of the estate in the probate court on November 15, 1897, showing assets to amount of $297,403.59.

The property of the estate so inventoried consisted of real estate in Detroit, including the McGraw Building and the lots upon which the same stands, at the southwest corner of Griswold street and Lafayette boulevard, the homestead at 1085 Woodward avenue and some vacant lots, as well as a considerable amount of personal property. Commissioners on claims were appointed, and later made a report, wherein claims to the amount of $197,867.45 were allowed. The report of the commissioners shows that all the mortgage indebtedness of said deceased, and particularly a claim of $125,000, and accrued interest due on a mortgage on the McGraw Building, and a claim for $7,500, and accrued interest due on a mortgage on the homestead, were presented as claims against the estate, and all such mortgage indebtedness, with accrued interest, was duly allowed by said commissioners as claims against the estate. After the executors took possession of the estate in November, 1897, they proceeded to pay the debts of the deceased, and the claims allowed against the estate by selling some of the property and using some of the assets, and the income of the estate for that purpose. On april 17, 1899, the executors filed a petition in the probate court in which they stated that personal estate to the amount of $111,-019.41 had come into their hands. Of this amount $60,000 of property remained undisposed of, consist-

ing partly of the McGraw Library, about $50,000 of capital stock of the Globe Tobacco Company, some Union National Bank stock, and bills receivable, and represented to the court that it was not a favorable time to dispose of the personal property without considerable loss, for the purpose of paying the outstanding just debts of the deceased, the balance of which then amounted to $184,507.96, and that the charges of administering the said estate would amount to $6,-673.50, and showed to the court that it was necessary for the purpose of paying the outstanding debts and charges against the estate to raise the sum of $165,000 by mortgaging the real estate, or some part thereof of which the deceased died seised. The petition represented that on the parcel known as the "McGraw Block" there was a mortgage of $125,000, of which $50,000 fell due December 1, 1897, and the residue December 1, 1899, and that the same bore interest at 5 per cent. per annum; that the additional $40,000 proposed to be raised was for the purpose of paying certain other claims therein named, some of which bore interest at 5 and some at 6 per cent. Said petition contained the following statement:

"Your petitioners have an opportunity now to borrow on said 'McGraw Block' the sum of $165,000 for five years, at the rate of 4½ per cent. interest, payable quarterly, with the privilege of paying installments of principal on any interest day. This will enable your petitioners to fund nearly all the debts of said estate at a low rate of interest, and to hold all the personal estate until the most favorable time to dispose of the same, and to use the proceeds of any sale within a short time after the same may be made to decrease the principal of said mortgage."

Notice of hearing of this petition was duly advertised, and on May 9, 1899, upon the hearing thereof, the probate court granted the executors license to raise

said sum of $165,000 upon the bond of said executors, secured by a mortgage upon the McGraw Building, for the purpose of paying the debts of the deceased and the charges of administering said estate. The executors immediately borrowed the said sum of $165,000 by bond and mortgage upon the McGraw Building, and paid all of the remaining debts and claims against said estate which were allowed by the commissioners on claims, including the $125,000, and accrued interest, due on mortgage on the McGraw Building, and the claim of $7,500, and accrued interest, due on mortgage on the homestead.

After all the debts and claims against the estate as allowed by the commissioners had been settled and paid, the executors continued to act as such until January, 1909. On January 13, 1909, the executors filed their petition in the probate court, in which they stated that they had filed their final report, and asked that the residue of the estate be assigned to them as trustees. On January 15, 1909, the final account of the executors was approved, the estate closed, and an order was entered in the probate court reciting the facts that upon hearing, it appearing that the debts and legacies of said deceased, the funeral charges, and expenses of administration having been paid in full and the said estate fully administered, the residue of the estate be assigned to the trustees in accordance with the provisions of the will.

Homer McGraw and Hoyt Post qualified as such trustees under the will, and the residue of the estate was assigned to them, as the survivors of the trustees named in the will. They took possession of the said estate for themselves and their successors in trust, and the management thereof, without filling the vacancy caused by the death of Charles E. Swales until the death of Hoyt Post in January, 1912. Thereafter

William H. Brace and James V. Oxtoby were appointed and qualified as trustees to succeed Charles E. Swales and Hoyt Post. Upon the death of William H. Brace in January, 1915, Ralph Stone was appointed and qualified as his successor. Homer McGraw died in January, 1915, and since then no one has been appointed his successor, and therefore the estate is now managed by the defendants Oxtoby and Stone.

Since the death of Thomas McGraw the executors, until the year 1909, when the residue of the estate was assigned to the trustees, and since then the trustees, have paid to Sarah I. McGraw, the widow of the deceased, the sum of $5,000 per annum, and to Ivy McGraw Serrill, daughter of deceased, until her death in 1913, and since then to her children, the sum of $1,500 per annum; these being the annuities provided for by the provisions of paragraph 1 of the will and the first codicil. The complainants contend, however, that the provisions of paragraph 1 of the will, which provided for such annuities "until all debts and claims against my estate are fully settled and paid," etc., became inoperative after the payment of all claims and demands against the estate as allowed by the commissioners on claims in 1899, and that since that time the provisions of paragraph 8 of the will, which provides for the payment of increased annuities "after all debts and demands of every kind against my estate are fully paid," became operative, and that the increased annuities as provided for by paragraph eight should have been paid. The bill of complaint was filed to secure the proper annuities which complainants claim are due them under the provisions of said paragraph 8.

There is necessarily involved an interpretation of the terms of the will, and, should the will be construed as contended for by complainants, there must follow an accounting by the trustees in order to determine what the net income of the estate has been since the

time the claims and demands as allowed by the commissioners have been paid. No question is raised as to the jurisdiction of the court.

Counsel for complainants say in their original brief:

"The vital question in this case is whether or not the provisions of paragraph 8 of the will have become operative, and, if so, at what time. The complainants contend that paragraph 1 of the will, under provisions of which they have been receiving an annuity of $1,500 since the death of Thomas McGraw in 1897, ceased to be operative upon the payment by the executors in 1899 of all the just debts of the deceased which were allowed by the commissioners on claims, and that since the payment of those debts the provisions of paragraph 1 of the will ceased to be operative, and that thereafter the provisions of paragraph 8 of the will became operative; that since the year 1899 testator's daughter, Ivy McGraw Serrill, and her children since the time of her death, should have received the annuity provided for by paragraph 8 of the will, namely, two-fifths of the annual net income if the same was $10,000 or less, and one-third thereof if the same was more than $10,000."

Counsel for complainants urge in argument that testator had a twofold plan in mind in making his will; that it was his intention to give the bulk of his estate to certain persons named in the will as the residuary devisees after the death of his wife and daughter, but during the lives of the wife and daughter he intended that each of them should be provided with an annuity out of the income of his property; that it was not the intention of the testator in making his will to create a trust for the payment of his debts; that his mortgage indebtedness might be proven as a claim against the estate, as happened, and have to be paid, or the estate might vest subject to the mortgage indebtedness; that he did not intend to create a trust for the payment of the debts, and thereby increase the body or capital of

the estate by reducing the indebtedness for the benefit of the residuary devisees and at the expense of the life beneficiaries or annuitants, but that it was his intention that the residuary devisees should take the same body or capital of the estate that existed at the time of his death, unless it would be increased by the application of the residue of the net income of the estate after the provisions of paragraph 8 of the will were complied with; that it was the testator's dominant purpose to provide for the comfortable support and maintenance of his wife and his daughter during their lives, and for the children of his daughter in case of her death during the life of Mrs. McGraw, and also to provide small annuities for his sisters and their children, and for his stepson; and that this dominant purpose to provide so particularly for the comfort and maintenance of the wife and daughter is apparent, as upon the death of both the trust terminates, and the estate is to be distributed. In very lengthy and able briefs and in oral arguments counsel for both parties have called attention to, and have discussed the different paragraphs of the will.

On behalf of the trustees, after referring to the placing of the new mortgage of $165,000 by license from the probate court, counsel say:

"The issue in this case is whether by this action of the executors 'all debts and demands of every kind' against the estate were fully paid within the meaning of paragraph 8 of the will, so that increased annuities to his widow and daughter were thereby made payable, or whether the debt secured by the mortgage was a debt or demand within the meaning of the will. * * *

"The questions involved in this case are to be determined by testator's intention, as evidenced by his will. His wishes expressed or necessarily implied are to be carried out.

"The trustees claim that when the $165,000 mortgage on the McGraw Building was given, and the old

mortgages on the building and homestead, and the other debts were paid from its proceeds, testator's debts had not been paid within the meaning of the will.

"The trustees claim, further, that what the executors did by way of raising money by mortgage to pay debts has no bearing on the construction of the will; that the will must be construed independently of what the executors did; that the respective rights of life beneficiaries and remaindermen cannot be affected by the fact that the executors paid off claims allowed by the commissioners with money borrowed from other sources, instead of paying them from the income and sale of property as directed by the will.    *    *    *

"But it is not merely the debts of the deceased which are required to be paid before the annuities are to be increased. The expression in paragraph 8 'all debts and demands of every kind against my estate' is of broader significance. The 'estate' of a deceased person means the property, real and personal, of the deceased, and the title by which it is held, but particularly the property itself. Debts and demands against an estate are all those items which are a charge against the property, and are payable out of it, or the income or proceeds of it. The expression in paragraph 8 included, therefore, not only the debts of the testator, but also all charges or incumbrances lawfully created by the executors or trustees in the administration of their trust."

Counsel then call attention to authorities to the effect that the word "demand" is more comprehensive than any other word in the law, with the exception of the word "claim," with which in its broader sense it virtually corresponds, and that the addition of the words "of every kind" in the will indicates that the word "demands" is to be given its broadest signification, citing 9 Am. & Eng. Enc. Law, 198; *State* v. *Baxter*, 38 Ark. 467; Bouvier's Law Dict.; *Wiseman* v. *Wiseman*, 73 Ind. 112-116 (38 Am. Rep. 115) ; *Mayberry* v. *McClurg*, 51 Mo. 256-261; and other authorities.

It is urged that the $165,000 mortgage securing an obligation (bond) executed by the executors falls within the expression "demands of every kind against my estate," and that, if any personal element is required to fill out the definition of the word "demands," this is supplied by the obligation signed by the executors, and which was secured by the mortgage. Counsel for complainants argue that it was not testator's intention "to create a trust for the payment of his debts."

Counsel for the trustees reply:

"We claim to the contrary. The trust created by the will was both a trust to provide for his wife and daughter, and *also* to provide for the payment of debts. In so providing testator had in mind first the care of his wife and daughter. Their annuities were to be paid first. The trust was to continue only during two lives. It was not to continue after their death, even though debts were still then outstanding."

It is a significant fact that the second codicil was made in 1896. At the date of this codicil (which operated as a confirmation of the will except as modified) testator knew that of the mortgage on the McGraw Building $50,000 would fall due in one year, and the remaining $75,000 in two years thereafter, and that the executors would possibly find it necessary to replace this mortgage with a new one. He accordingly, in the direction in paragraph 5 relative to the "payment of all mortgages and incumbrances which may exist," probably had in mind that these "mortgages and incumbrances" might consist of renewed mortgages.

In considering this will the intent of the testator must be gathered from the four corners of the instrument, and the court should harmonize all of its provisions, if possible, to carry out the intent of the testator. *Wales* v. *Templeton,* 83 Mich. 177 (47 N. W.

238); *Stebbins* v. *Stebbins*, 86 Mich. 474 (49 N. W. 294); *Gregory* v. *Tompkins*, 132 Mich. 205 (93 N. W. 245); *Foster* v. *Stevens*, 146 Mich. 131 (109 N. W. 265). Another well settled rule is that the construction of the will should not be varied by events subsequent to the execution of it.

Manifestly, testator contemplated that there might be mortgages upon the property after the trustees were in charge. He evidently did not expect that the mortgages would be presented as debts to the commissioners on claims. They were presented and they constituted a debt which he owed at his death. The new mortgage placed by the executors constituted a demand against the estate.

An examination of the will satisfies us that one of the dominant purposes of the testator was to keep the McGraw Building in proper condition, and to improve and preserve it, and to pass it on to the residuary devisees and he authorized its rebuilding in case it was destroyed by fire or otherwise. If in its improvement it became necessary to postpone the payment of the principal of the incumbrances, he authorized that to be done. It will be remembered that the complainants, who are the children of Ivy McGraw Serrill, are entitled to share in the residue of the estate to the extent of 32 per cent. thereof. It cannot be said that testator did not have that fact in mind.

After duly considering the entire case, we are led to agree with the circuit court, wherein it found that all debts and demands of every kind against the estate of Thomas McGraw, deceased,

"are not fully settled and paid within the meaning of the terms of said will, and that the increased annuities provided for in paragraph 8 of said will to Sarah I. McGraw (the widow of said testator), and to Ivy McGraw Serrill (and her children) are not yet properly payable by the trustees under said will, and that com-

plainants are not entitled to the accounting prayed for in their bill."

The decree of the circuit court is therefore affirmed, with costs against complainants.

Kuhn, Bird, Moore, Steere, Brooke, and Person, JJ., concurred. Ostrander, J., did not sit.