*In re* HENRY'S ESTATE.

HENRY *v.* DREW.

1. WILLS—LETTER NOT CONVERTED INTO CODICIL BY WITNESSES—INTENT.

Where testatrix intended instrument to be communication to her attorney instructing him to prepare modification of her will, mere fact that two other persons of their own volition, and without request from testatrix, subscribed their names as witnesses thereto, did not convert letter into codicil.

2. SAME—EXTRINSIC EVIDENCE ADMISSIBLE.

On issue as to whether testatrix intended letter to her attorney instructing him to prepare modification of her will to be present testamentary disposition of her property, court is not limited to consideration of contents of instrument, but extrinsic evidence is admissible.

McDONALD, C. J., and WIEST, J., dissenting.

Appeal from St. Clair; Robertson (William), J. Submitted June 15, 1932. (Docket No. 102, Calendar No. 36,599.) Decided September 16, 1932. Submitted on rehearing October 26, 1932. Former opinion (259 Mich. 499) reversed June 5, 1933.

Archibald Drew presented for probate the will of Maggie Henry, deceased. Thomas A. Henry presented for probate a codicil thereto. Contest certified to circuit court. From judgment denying probate of codicil, Henry appeals. Affirmed.

*John R. Rood,* for appellant.

*Benedict & Benedict (Walsh, Walsh & O'Sullivan,* of counsel), for appellees.

ON REHEARING.

McDONALD, C. J. (*dissenting*). The question presented on motion for a rehearing is stated in the brief of appellees as follows:

"Was this will properly attested? The paper in this case is in the form of a letter. It is sufficient to constitute a will, if executed in accordance with statutory formalities."

This question was not discussed in our former opinion and evidently was not considered.

The statute (3 Comp. Laws 1929, § 13482) requires that a will be "attested and subscribed in the presence of the testator by two or more competent witnesses."

It is the claim of the appellees that it was not legally attested and subscribed, because the testator did not request it and did not know that it was witnessed.

A request in terms is not necessary. The statute does not require it. A will is validly subscribed and attested though the testator does not request it, if done in his presence with his knowledge and acquiescence. In this case there was no request from the testatrix. Her knowledge and acquiescence must be determined from the attending circumstances. All of the testimony is from the two attesting witnesses, Mrs. Whiting, who drew the instrument and directed the manner of its execution, and Mrs. Yeager, who was a nurse in attendance on the testatrix.

Mrs. Whiting testified that she read the paper over to Mrs. Henry, who assured her that it correctly stated her wishes as to the disposition of her property, and—

"So we fixed it up. She signed Maggie Henry's name there, and Maggie Henry made her mark, and

then Mrs. Yeager had the pen and Maggie Henry had her hand on the top, and Mrs. Yeager put her name there and her cross and then her own name. Then I said, 'Now, we will put on our names as witnesses.' * * *

"Q. Did you and Mrs. Yeager sign in the presence of Mrs. Henry?

"A. Well, she saw us signing, yes."

Mrs. Yeager testified:

"Q. She never knew anybody witnessed it?

"A. She could see us.

"Q. Did she say anything about your witnessing it? She did not ask you to witness it?

"A. No. * * *

"Q. You don't know if she saw you witness it?

"A. I don't know.

"Q. Unless she saw you she would have no way of knowing you witnessed it?

"A. No."

The testimony shows that at the time she executed the will she was fully conscious of what was going on.

If so, she heard Mrs. Whiting say, "Now, we must sign it as witnesses," and from this remark she undoubtedly knew what they were doing with it and their purpose in taking it over to the table where it was subscribed. Unless we discard the testimony of Mrs. Whiting, we cannot escape the conclusion that Mrs. Henry had knowledge of the fact that the paper was subscribed by the attesting witnesses and that she acquiesced in their act. It is true that Mrs. Whiting was very active in the matter, that she had charge of the whole transaction and directed how the instrument should be executed; but she was called in by Mrs. Henry for that purpose. She was a neighbor and friend and had previously written

letters for Mrs. Henry, who apparently was an un-educated person. As is true with the testimony of the average witness, her testimony justifies criticism in some respects, but we see no reason why it should be ignored entirely. She and Mrs. Yeager were the only witnesses to the execution of the will, and in the main their testimony is not disputed by any of the circumstances. We think it shows a legally attested and subscribed codicil to the will of Maggie Henry, deceased.

On rehearing we should adhere to our former opinion.

WIEST, J., concurred with McDONALD, C. J.

NORTH, J. On the application for rehearing, it was pointed out that, in addition to the question of law passed upon in the opinion rendered (259 Mich. 499), there was also a controlling question of fact which we failed to review. Reconsideration of the record sustains this assertion. We did not review the finding of the circuit judge that the paper presented by appellant as a codicil to Mrs. Henry's will is in fact only a letter to her attorney, and was not executed by her *animo testandi*. The contention of appellees on this rehearing is thus stated in their brief:

"Mrs. Henry (the deceased) requested only that a letter be written. She did not request any witnesses. She never knew that any other persons signed it as witnesses. She never saw it after it was witnessed. She never called it anything but a letter. In form it was only a letter when she last saw it."

On this phase of the case, the only living persons present and having knowledge of the signing and witnessing of the letter are the two witnesses there-

to, Mrs. Yeager and Mrs. Whiting; the former was the attending nurse and the latter a neighbor. Appellees in support of their contention were compelled to rely largely upon the testimony of these witnesses. To say the least, neither of these two witnesses was unfriendly to appellant. Mrs. Whiting wrote the letter on a typewriter. Four days later, according to Mrs. Yeager's testimony, Mrs. Henry, in the presence of only Mrs. Yeager and Mrs. Whiting, made her cross upon the letter in connection with which Mrs. Yeager signed Mrs. Henry's name in her presence, and then in an adjoining room connected with an archway Mrs. Yeager and Mrs. Whiting subscribed their names as witnesses. The letter was thereupon placed in Mr. Henry's hands and mailed to decedent's attorney. A careful reading of this record, and careful consideration of the contents of the letter itself, fail to disclose any evidence of an intent on the part of Mrs. Henry that this instrument should be testamentary in character. She did not declare it to be such, neither is there any testimony that she requested any one to witness it as a testamentary instrument. Instead, the only fair and reasonable conclusion is that Mrs. Henry had the letter prepared as a communication to her attorney advising him of a change she wished to make in the testamentary disposition of her estate, and that she wished him to change her will accordingly. The attorney received the letter, construed it in this manner, acted under the directions given to him, but reached Mrs. Henry too late for the execution of a modified will.

We cannot quote all the record which tends to throw light upon whether Mrs. Henry intended to do anything other than communicate by letter with

her attorney relative to changing her will but the following extracts are somewhat illuminating and disclose quite conclusively that at the time all parties concerned regarded the instrument as a letter, not a codicil.   Mrs. Yeager testified:

"Yes, I did not consider it a will; but a *letter*."

And further that Mrs. Henry said to the witness:

"I want him (Mr. Henry) to go and mail that *letter*."

Again this witness testified:

"She (Mrs. Whiting) said she told him (Mr. Henry) about the *letter* she had written."

And that:

"She (Mrs. Henry) was happy because she had written the *letter* to Mr. Speed (the attorney) to change that will. * * * The only thing that Mrs. Henry asked Mrs. Whiting to do was to write the *letter* to Speed."

Mrs. Whiting testified:

"I had gone over there to see how she (Mrs. Henry) was, and she asked me point blank, would I write to Mr. Speed, and she told me what to write. She said, 'I was mad when I made that will six years ago, and I want to change it;' and she told me what change she wanted, just like that *letter* says.  I said, 'Are you sure that is what you want? Now, let me understand, I will write the *letter* as you want it.' I said, 'I will write the *letter*, but let me understand you and you understand me.' "

On cross-examination the witness again testified that she (Mrs. Henry) said:

" 'Mrs. Whiting, will you do something for me?' or 'Will you write a *letter* for me?' "

Later on cross-examination she testified:

"Mrs. Henry asked me to send that *letter* to Mr. Speed. * * * She asked me to write to Mr. Speed and tell him that she wanted her will changed and she told me how to have it changed, what to write to him and I repeated it."

When the communication was received by Mr. Speed, who as attorney for Mrs. Henry had drafted her former will, he also considered it merely a letter directing him to prepare a modified will. He testified:

"On the afternoon of September 25, 1929, I received a *letter* purporting to have been written by Mrs. Henry, the *letter* introduced in evidence here. I read it, acted on its instructions, prepared another will and left for Point DuChene (where Mrs. Henry lived), at six that night to have it executed."

From the foregoing it appears that Mrs. Henry and every other person who had knowledge of the contents of this instrument considered it as a letter, and it was consistently referred to as such. As to its being witnessed, a fair inference from the record is that this formality was deemed necessary because Mrs. Henry signed the letter by placing her cross thereon rather than signing her name in full. Mrs. Whiting testified:

"I told Mrs. Yeager if she (Mrs. Henry) could write, let her sign her name there; if she couldn't write, to witness her signature."

The extent of the showing on this phase of the case is that Mrs. Yeager testified Mrs. Whiting was sent for to participate in the execution of the document because Mrs. Yeager knew nothing about the execution of such a paper. In any event, it conclusively appears from the record that witnessing this instrument, if not wholly without the knowledge of

Mrs. Henry, was without any request on her part. Mrs. Yeager testified:

"*Q.* Did she say anything about your witnessing it? She did not ask you to witness it?

"*A.* No."

Mrs. Whiting testified that she said to Mrs. Yeager:

" 'We will have her (Mrs. Henry) execute it and then have him (Mr. Henry) take it to the post office to mail.' So we fixed it up. She (Mrs. Yeager) signed Maggie Henry's name there and Maggie Henry made her mark. * * * Then I said, 'Now, we will put on our names as witnesses.' "

In reviewing the record we have not overlooked the fact that Mrs. Whiting, over objection, testified to her own conclusion that in signing the document Mrs. Henry knew or thought she'was making a testamentary disposition of her property; and also that this witness testified Mrs. Henry "saw us signing" it. Notwithstanding this testimony, we think upon this record it clearly and convincingly appears that the instrument in question was intended by Mrs. Henry merely as a communication to her attorney instructing him to prepare a modification of her will. This being so, it must be held to be such and only such. The mere fact that two other persons of their own volition subscribed their names as witnesses did not convert the letter into a codicil. The issue of fact presented must be determined in the light of the rule of evidence which in a note, 54 A. L. R. p. 932, citing cases, is thus worded:

"It is generally conceded that in addition to the usual burden of proof resting upon the proponent of a will in probate proceedings, it is also presumed that an informal instrument, such as a letter, not purporting on its face to be a will, was not executed *animo testandi.* 1 Redfield, Wills (4th Ed.), 167."

There is no testimony in this record, if fairly construed, which tends in any way to show that Mrs. Henry signed this letter with any intention that it should operate as a will, or that she had any knowledge or in any way acquiesced in the witnessing of the document by Mrs. Whiting and Mrs. Yeager as a will. The following is a fitting statement of the law applicable to the question here presented:

"It is necessary, however, that the instrument, whatever it may be, whether a note, settlement, or deed, should have been designed to operate as a disposition of the testator's property. That identical paper must have been intended to take effect in some form. It must have been written *animo testandi.* In the language of Judge Cabell, 'A paper is not to be established as a man's will merely by proving that he intended to make a disposition of his property similar to or even identically the same with that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will. Unless it does so appear, the paper must be rejected, however correct it may be in its form, however comprehensive in its details, however conformable to the otherwise declared intentions of the party, and although it may have been signed by him with all due solemnity.'

"This doctrine is sound in principle, is commended by its intrinsic justice and wisdom, and is fully sustained by the authorities. *Sharp* v. *Sharp,* 2 Leigh (29 Va.), 249; *Hocker* v. *Hocker,* 4 Gratt. (45 Va.) 277; *Waller* v. *Waller,* 1 Gratt. (42 Va.) 454 (42 Am. Dec. 564); *Pollok* v. *Glassell,* 2 Gratt. (43 Va.) 439." *McBride* v. *McBride,* 26 Gratt. (67 Va.) 476.

Careful consideration of the issue of fact stressed upon this rehearing forces the conclusion, as held by the trial judge, "that it was not the intention of Mrs. Henry to have this paper operate as a will dis-

posing of her property after death." The disallowance of this instrument as a codicil to the former will of Mrs. Henry was proper and should be affirmed.

One other phase of our former opinion should be noted. As applied to the factual situation disclosed on this rehearing, I am not in accord with the following statement of law embodied in our former decision herein:

"It (the letter) is a valid will unless there is something in its language showing that she did not intend it to operate as such but intended it merely as an instruction to her attorney in redrafting her former will. *Her intention must be deduced from the paper itself.*"

On the issue of fact here presented, that is, whether Mrs. Henry intended this letter as being a present testamentary disposition of her property, a court is not limited to consideration of the contents of the instrument. Instead, extrinsic testimony is admissible. *Lawyer* v. *Smith,* 8 Mich. 411 (77 Am. Dec. 460); *Harring* v. *Allen,* 25 Mich. 505. To hold otherwise would permit perpetration of fraud and bar the means of exposure. The quoted statement of law is applicable to a controversy as to the construction of a will after its testamentary character has been admitted or established. *Wales* v. *Templeton,* 83 Mich. 177; *Stebbins* v. *Stebbins,* 86 Mich. 474; *Stender* v. *Stender,* 181 Mich. 648. But the rule of law is not applicable to the issue of fact presented in a case wherein the testamentary character of the instrument is challenged.

On rehearing, the judgment entered in the circuit court should be affirmed, with costs to appellees.

CLARK, POTTER, SHARPE, FEAD and BUTZEL, JJ., concurred with NORTH, J.